UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JERRY LYNN TORRES | * | CIVIL ACTION NO. 17-9678 |
| | * | |
| VERSUS | * | SECTION: "R"(1) |
| | * | |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | * * * | JUDGE SARAH S. VANCE MAGISTRATE JUDGE JANIS VAN MEERVELD |
| ************************************* | * | |

REPORT AND RECOMMENDATION

The plaintiff, Jerry Lynn Torres, seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381. The matter has been fully briefed on cross-motions for summary judgment. For the following reasons, IT IS RECOMMENDED that the Motion for Summary Judgment filed by the plaintiff (Rec. Doc. 14) be DENIED; and the Motion for Summary Judgment filed by the Commissioner (Rec. Doc. 15) be GRANTED.

**Procedural Background**

Mr. Torres applied for SSI on April 17, 2014, asserting a disability onset date of January 1, 2013. He alleged the following illnesses, injuries, or conditions: vision problems, bad stomach, and right kidney shutting down. On October 15, 2014, his claim was denied by the state agency. Mr. Torres obtained counsel and requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 25, 2016. On May 4, 2016, the ALJ issued an adverse decision. The Appeals Council denied review on August 11, 2017.

On September 27, 2017, Mr. Torres filed a Complaint in federal court to review the Commissioner's decision. (Rec. Doc. 1). The Commissioner answered and filed the administrative

1

record. (Rec. Docs. 10, 11). The parties filed cross-motions for summary judgment. (Rec. Docs. 14, 15). Mr. Torres is represented by counsel.

## **Evidence in the Record**

A hearing was held before the ALJ on February 25, 2016. Mr. Torres lived with his parents and his children aged 10 and 11 at the time of the hearing. R. at 42. Mr. Torres testified that he wore glasses as a child, but stopped wearing glasses after high school because he stopped going to the eye doctor. R. at 39-40. He testified that he got glasses again about eight months prior to the hearing. R. at 40. Mr. Torres testified that he does some cleaning and cooking around the house. R. at 42. Sometimes he takes his children fishing. R. at 42. He can take care of himself, bathe, dress, and shave, though he noted he did not use a razorblade. R. at 47.

Mr. Torres testified that he had not worked at all since 2013, except for occasionally cutting a neighbor's grass. R. at 41. During a telephone interview with the state agency in conjunction with his application for disability benefits Mr. Torres reported that he stopped working in October 2008 due to the conditions specified in his application (vision problems, bad stomach, and right kidney shutting down). R. at 112. He reported working in construction from 1998 through 2008 and as a stocker in a grocery store from 1999 through 2007. R. at 113.

The ALJ asked why Mr. Torres had told the consultative examiner that he could read, watch TV, shop, and take public transit, if it cannot see at all. R. at 40. Mr. Torres said he does not take public transportation and that his mother drives him everywhere. R. at 40. He said the only time he reads is when he helps his children with their homework and he uses his eyeglasses and a magnifying glass to do so. R. at 40. He explained that sometimes he rides with his mother, who does the shopping. R. at 42-43. He said that he can watch TV because he does not sit far away and he has a 64 inch TV. R. at 45. Mr. Torres testified that he can walk outside without bumping into

2

things, unless they are in his peripheral vision. R. at 45. He said he would trip on the sidewalk if it had a lip. R. at 45.

*Medical Records*

Mr. Torres only challenges the ALJ's findings with regard to the extent of his visual limitations. Accordingly, the Court's summary of medical records is limited to vision related medical records.

A consultative examination was performed on August 4, 2014, by Dr. Gary F. Carroll with Internal Medicine Associates of New Orleans, LLC. R. at 220. Dr. Carroll noted that Mr. Torres does not have a driver's license, but he is able to take standard public transportation. R. at 221. Dr. Carroll also noted that Mr. Torres performs household chores, reads, and watches television. R. at 221. Upon a review of systems, Dr. Carroll noted Mr. Torres has a history of myopia. R. at 221. Mr. Torres reported that he had not worn lenses or had an eye examination since childhood. R. at 221. Upon physical examination, Mr. Torres' uncorrected visual acuity was measured at 20/160 bilaterally. R. at 222.

Mr. Torres presented to Dr. de la Rua on October 2, 2014, for an eye examination. R. at 227. Dr. de la Rua filled out a Disability Determination Services Eye Examination Report. R. at 227. Mr. Torres had uncorrected visual acuity of 20/200 in the right eye and 20/CF (count fingers) in the left. R. at 227. With best correction, visual acuity was measured at 20/150 in the right eye. R. at 227. Dashes in the row for "left eye" indicate that the corrected vision in the left eye remained 20/CF. R. at 227. An SSA Kinetic test was performed, and the results were attached. R. at 228-29. In the next section of the form, Dr. de la Rua noted that Mr. Torres was cooperative, but that the test results were not valid. R at 227. His notes explain "ambulation/mobility observed in free space does not reflect or agree [with] severe field constrictions." R. at 227. He added that the "situation

may be clarified with [Visual Evoked Potential] testing." R. at 227. Dr. de la Rua included no further explanation regarding the validity or invalidity of the test results. Despite his note regarding invalidity, Dr. de la Rua filled out the last portion of the form, asking whether the claimant can read fine print, read large print, handle and work with large objects, drive an automobile, operate machinery, avoid objects in workplace pathways, or avoid people approaching from the side. R. at 227. For all, he circled "no." R. at 227. For "handle large objects" and "operate machinery" he put a question mark next to the "no" response. R. at 227.

State agency examiner Dr. Jerome Medley reviewed the medical records in Mr. Torres' disability benefits application and completed a case analysis on August 28, 2014. R. at 60. In the residual functional capacity assessment, Dr. Medley summarized Mr. Torres' visual limitations as best vision of 20/150 in the right eye and CF (count fingers) in the left eye, a history of amblyopia, and severe constriction of visual fields on SSA kinetic testing exam. R. at 60. But Dr. Medley noted the exam of Mr. Torres' eyes did not show any abnormalities to account for the poor vision or poor visual fields and the result of the consultative examination "were felt not to be valid." R. at 60. Dr. Medley further noted that he called consultative examiner Dr. de la Rua, who "stated claimant was able to manipulate around the office without any problems. If his vision and such severe constriction of his fields were this bad, he would have had problems in a strange environment." R. at 60. A case analysis form by Dr. Medley dated October 15, 2014, concludes "deny vision because of invalid findings." R. at 230.

While at the University Medical Center in New Orleans ("UMC") on February 12, 2015, for evaluation of chronic kidney disease, Mr. Torres reported bilateral vision changes and stated that he has had vision difficulties since he was a child. R. at 259, 261. On February 23, 2015, he returned to UMC to establish care with a primary care physician. R. at 268. Chronic blurry vision

4

was noted in the review of systems. R. at 269. However, the recommended plan focused on a renal work up, blood pressure medication, his abdominal pain, and his back pain, but not blurry vision. R. at 272.

On December 10, 2015, Mr. Torres presented at the UMC for a hypertension eye screening. R. at 345. Goals of keeping blood pressure below 140/80 and cholesterol with LDL below 100 were discussed. R. at 347-48. He was referred to LSU Ophthalmology. R. at 348.

Mr. Torres presented at the UMC Vision Center on February 15, 2016, to establish care. R. at 385. He complained of dry, itchy eyes. R. at 385. Mr. Torres received an eyeglasses prescription for +2.5 in the right eye and +1.75 in the left eye. R. at 232.

Ten days later on February 25, 2016, Mr. Torres received an eyeglasses prescription for +4.25 in the right eye and +5.75 in the left eye from Dr. Dennis Muller with Eyedox. R. at 236. Dr. Muller also noted that Mr. Torres has "complete loss of inferior visual field" and recommended that he be examined for pituitary adenoma or other space taking lesion. R. at 237.

Additional evidence that was not before the ALJ was submitted by Mr. Torres to the Appeals Council. Mr. Torres submitted additional records from his February 15, 2016, visit with the UMC Vision Center. R. at 30. He was diagnosed with bilateral amblyopia and poor vision. R. at 30. Uncorrected visual acuity in the right eye was 20/70-2 and 20/200 in the left. R. at 30. Final prescription was +2.5 for the right eye and +1.75 for the left eye. R. at 31.

He also submitted additional records from his February 25, 2016, examination at Eyedox with Dr. Muller. R. at 27-28. Mr. Torres reported blurred vision at distance and near, peripheral vision, and dry eyes. R. at 27. Unaided visual acuities were recorded as 20/200 in both the left and right eyes. R. at 26. Final prescription assigned was +4.25 in his right eye, resulting in visual acuity of 20/50, and +5.75 in his left eye, resulting in visual acuity of 20/70. R. at 27-28. Upon

examination, Dr. Muller noted bilateral visual field screening was normal. R. at 28. Impressions were noted as dry eye syndrome, hyperopia, and astigmatism. R. at 28.

Mr. Torres also submitted records from a December 29, 2016, examination by Ophthalmologist Dr. Martin J. Schoenberger. Vision in his right eye was 20/200 and in his left eye was 20/400. R. at 9. Dr. Schoenberger wrote Mr. Torres an eyeglass prescription for +350 in the right eye and +450 in the left eye, with additional 225 in both. R. at 8. Dr. Schoenberger ordered a carotid ultrasound for optic neuropathy. R. at 12.

On January 3, 2017, a carotid bilateral study was performed using B-mode and Doppler scanning. R. at 10. A history of ischemic optic neuropathy was noted. R. at 10. Impression was no significant hemodynamically abnormality. R. at 11.

The Appeals Council did not consider the February 2016 vision exams because it found the evidence "does not show a reasonable probability that it would change the outcome of the decision." R. at 2. The Appeals Council did not consider the December 2016 and January 2017 medical records because these relate to the period after the date of the ALJ's decision. Id.

*Vocational Expert:*

The vocational expert classified Mr. Torres' past work as: construction helper, DOT number 869.687.026, SVP 2, very heavy exertion; and stocker in a grocery store, DOT number 299.367.014, SVP 4, heavy exertion. R. at 48.

The ALJ posed the following hypothetical person for the vocational expert's consideration: a younger person, 40 years of age, with a high school education, and Mr. Torres' past work experience, with no exertional limitations, but the person is restricted to avoid all work hazards such as dangerous machinery or heights and limited to occasional far vision. R.at 48. The vocational expert testified that such an individual could perform work as a cleaner, DOT number

381.687-018, SVP 2, medium exertion, with a national population of 2,068,450 and state population of 27,630; cleaner, DOT number 323.687-010, SVP 2, medium exertion, with national population of 877,980 and state population of 15,600; or dishwasher, DOT number 318.687-010, SVP 2, medium exertion, with national population of 504,280 and state population of 5,850. R. at 48.

The ALJ modified the hypothetical to add a limitation of only occasional near vision. R. at 49. The vocational expert testified that there would be no problem performing the two cleaner jobs or the dishwasher job. R. at 49.

Mr. Torres' counsel changed the hypothetical to add that the person cannot read fine print, large print, handle and work with large objects, drive, operate machinery, avoid objects in the workplace pathway, or avoid people approaching from the side. R. at 49. It appears the vocational expert testified that such a person would not be able to perform the previously mentioned jobs. R. at 51.

## Decision of the Administrative Law Judge

The ALJ found that Mr. Torres has not engaged in substantial gainful activity since April 17, 2014. R. at 19. The ALJ determined that Mr. Torres has a severe impairment of poor vision. R. at 19. However, the ALJ determined that Mr. Torres does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In making this determination, the ALJ considered Listing 2.02 (loss of central visual acuity). R. at 19-20. The ALJ next assessed Mr. Torres with a residual functional capacity to perform a full range of work at all exertional levels, but with a limitation that he must avoid all work hazards including dangerous machinery and heights, and a limit to occasional far vision. R. at 20. In making this determination, the ALJ

considered the consultative examination of Dr. Carroll and the consultative examination of Dr. de la Rua. R. at 21. The ALJ also considered Mr. Torres' ability to perform a variety of activities of daily living. R. at 21.

The ALJ next determined that Mr. Torres cannot perform his past relevant work. The ALJ determined that Mr. Torres was a "younger individual" on the date the application was filed. R. a 21. The ALJ determined that Mr. Torres has at least a high school education and is able to communicate in English. R. at 22. The ALJ found transferability of job skills was not material to the decision. R. at 22. Finally, the ALJ determined that considering Mr. Torres' age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Mr. Torres can perform. R. at 22. Thus, the ALJ concluded that Mr. Torres has not been under a disability as defined by the Act since April 17, 2014, the date his application was filed. R. at 23.

## Statement of Issues on Appeal

Issue No. 1.    Whether the ALJ's finding that Mr. Torres' impairments do not meet or equal Listing 2.02 and Listing 2.03 is supported by substantial evidence.

Issue No. 2.    Whether the ALJ's residual functional capacity assessment is supported by substantial evidence.

## Analysis

### I. Standard of Review.

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005). Substantial evidence is more than "a mere scintilla," but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Hames

v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983). Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's. Perez, 415 F.3d at 461.

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113 (1992). Despite this Court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

## II.     Entitlement to Benefits under the Act.

To be considered disabled under the Act, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Pursuant to the regulations promulgated under the Act, the Commissioner engages in a five-step sequential evaluation process to determine whether an individual qualifies as disabled. See 20 C.F.R. § 404.1520(a)(4). At each step, if the Commissioner determines that an individual is or is not disabled (depending on the step), her decision is made on that basis and she does not proceed to the next step. Id. Following these same five steps, the ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe

>impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

Perez, 415 F.3d at 461. The burden of proof is on the claimant in steps one through four, and then at step five, the Commissioner must "show that the claimant can perform other substantial work in the national economy." Id. Once the Commissioner has made this showing, the claimant bears the burden to rebut the finding. Id. An assessment of the claimant's residual functional capacity is used in steps four and five to determine the claimant's ability to perform his past work or any other type of work. Id.

### I.      **Plaintiff's Appeal**.

*Issue No. 1.      Whether the ALJ's finding that Mr. Torres' impairments do not meet or equal Listing 2.02 and Listing 2.03 is supported by substantial evidence.*

Mr. Torres argues that the ALJ erred in finding that Mr. Torres' impairments do not meet or equal a Listed impairment because the ALJ did not perform any Listing evaluation. Mr. Torres insists that the objective evidence supports a finding that Mr. Torres' impairments meet Listings 2.02 and 2.03.

The ALJ simply noted that Listing 2.02 had been considered and concluded that the specific criteria of the Listing had not been established. The ALJ did not explain his reasoning for coming to this conclusion. The Court notes that the ALJ's failure to consider a specific listing or to support a finding that a specific listing has not been met with a reasoned discussion of the issues does not justify reversal if the error was harmless. See Hurst v. Colvin, 639 F. App'x 1018, 1021 (5th Cir. 2016). Remand is only required if "the ALJ's error 'cast[s] into doubt the existence of substantial evidence to support the ALJ's decision.'" Id. (quoting Morris v. Bowen, 864 F.2d 333, 335 (5th

Cir. 1988)). Thus, the Court now considers whether substantial evidence supports the finding that Mr. Torres' impairments do not meet or medically equal Listing 2.02 or 2.03.

First, Mr. Torres argues that the ALJ should have found that his impairments meet or medically equal Listing 2.02. Mr. Torres complains that the ALJ relied on Dr. Carroll's findings that Mr. Torres had 20/160 vision, but argues that the ALJ failed to realize that under the Social Security Administration's own rules, vision of 20/160 is equal to vision of 20/200, and vision of 20/200 establishes statutory blindness. Pursuant to the regulations, a person meets the requirements of Listing 2.02 when the "remaining vision in the better eye after best correction is 20/200 or less." The regulations cited by Mr. Torres explain that:

> Most test charts that use Snellen methodology do not have lines that measure visual acuity between 20/100 and 20/200. Some test charts, such as the Bailey-Lovie or Early Treatment Diabetic Retinopathy Study (ETDRS), used mostly in research settings, have such lines. If your visual acuity is measured with one of these charts, and you cannot read any of the letters on the 20/100 line, we will determine that you have statutory blindness based on a visual acuity of 20/200 or less. For example, if your *best-corrected* central visual acuity for distance in the better eye is 20/150 using and ETDRS chart, we will find that you have statutory blindness.

20 C.F.R. Subt. P, App. 1 § 2.00(A)(5)(b)(emphasis added).

As the Commissioner points out, the problem with Mr. Torres' argument is that Dr. Carroll's assessment of visual acuity at 20/160 was an assessment of Mr. Torres' uncorrected vision. Listing 2.02 requires consideration of the individual's visual acuity with "best correction." Mr. Torres fails to point to any evidence of his best corrected central visual acuity. Consultative examiner Dr. de la Rua recorded Mr. Torres' corrected vision in his best eye as 20/150.[1] However, Dr. de la Rua circled "no" after the question, "Are test results valid?" Dr. de la Rua added that

---

[1] Curiously, the Commissioner cites Dr. de la Rua's visual acuity finding without noting that Dr. de la Rua also determined the test results were invalid. Instead, the Commissioner seems to suggest that visual acuity of 20/150 does not satisfy Listing 2.02, despite the example in § 2.00(A)(5)(b). In contrast, in referring to Dr. de la Rua's visual field testing results, the Commissioner notes that Dr. de la Rua "opined that these findings were invalid as examination did not reflect such constrictions." (Rec. Doc. 15-1, at 6).

11

"ambulation/mobility observed in free space does not reflect or agree [with] severe field constrictions." R. at 227. Dr. Medley spoke with Dr. de la Rua in conducting his review of the medical records and noted that Dr. de la Rua stated "claimant was able to manipulate the office without any problems. If his vision and such severe constriction of his fields were this bad, he would have had problems in a strange environment." R. at 60. Significantly, both the state agency medical consultant Dr. Medley and the ALJ[2] agreed with Dr. de la Rua, that Dr. de la Rua's examination results were invalid.

    Mr. Torres seems to try and minimize Dr. de la Rua's invalidity finding by pointing out that Dr. De la Rua also noted "situation may be clarified with VEP testing." R. at 227. Mr. Torres complains that the ALJ did not order VEP testing. However, there is no evidence to suggest that VEP testing would have shown that Mr. Torres meets Listing 2.02. There were no other records of Mr. Torres' best corrected vision before the ALJ. Moreover, rather than casting doubt on the ALJ's conclusion, records submitted by Mr. Torres to the Appeals Council after the hearing, support the conclusion that Mr. Torres did not meet the requirements of Listing 2.02 during the relevant period. Although not considered by the Appeals Council, these records pertain to the relevant time period. The February 15, 2016, examination found uncorrected visual acuity of 20/70 in the right eye and 20/200 in the left eye. R. at 31. Although no evidence of corrected vision was included, the uncorrected vision in the best eye (his right) would not satisfy the 20/200 requirement for statutory blindness. Corrected vision in that eye would be the same or better. The February 25, 2016, examination recorded uncorrected visual acuity of 20/200 in both eyes. R. at 27. It appears

---

[2] Although ALJ did not provide an explanation of how he came to the conclusion that Listing 2.02 was not met, the ALJ analyzed Dr. de la Rua's findings in assessing Mr. Torres' residual functional capacity. The ALJ noted that Mr. Torres' vision was corrected to 20/150 on the right and 20/count fingers on the left. But the ALJ also noted that "the results of the examination were deemed invalid." The ALJ later explained that he assigned minimal weight to the limitations and restrictions issued by Dr. de la Rua because Dr. de la Rua indicated that his test results were invalid.

that with the prescribed lenses, visual acuity improved to 20/50 in the right eye and 20/70 in the left eye. R. at 27-28. These test results confirm the ALJ's conclusion that Mr. Torres' visual impairment did not meet the requirements of Listing 2.02. The Court finds that the ALJ's conclusion is supported by substantial evidence.

Mr. Torres also argues that the ALJ erred in failing to find that his visual impairments meet Listing 2.03. To meet Listing 2.03, the claimant must have contraction of the visual field in the better eye with:

A. The widest diameter subtending an angle around the point of fixation no greater than 20 degrees.
OR
B. An MD of 22 decibels or greater, determined by automated static threshold perimetry that measures the central 30 degrees of the visual field (see 2.00A6d).
OR
C. A visual field efficiency of 20 percent or less, determined by kinetic perimetry.

20 C.F.R. §404, Subpt P, App. 1 § 2.03. The Commissioner acknowledges that Dr. de la Rua's test results show visual fields less than 10 percent upon kinetic perimetry, but points out that Dr. de la Rua opined that the findings were invalid. As discussed above, Dr. de la Rua concluded the exam results were invalid and reported, that "ambulation/mobility observed in free space does not reflect or agree [with] severe field constrictions." R. at 227. Thus, Dr. de la Rua's test results cannot support a finding that Mr. Torres meets Listing 2.03.

The Plaintiff also points to Dr. Muller's finding in February 25, 2016, that Mr. Torres had complete loss of visual fields. However, Dr. Muller's note is on a prescription referring Mr. Torres for examination for pituitary adenoma or other space taking lesion. There is no indication in the record of what kind of testing was performed such that the Court can determine whether the requirements of Listing 2.03 have been met. Moreover, after the hearing before the ALJ, additional records from Mr. Torres' February 25, 2016, examination were submitted to the Appeals Council.

In this record, Dr. Muller reports that that the visual field screening was normal. R. at 28. Thus, substantial evidence supports a finding that Mr. Torres' visual impairment does not meet or equal Listing 2.03. The Court finds that to the extent the ALJ should have considered Listing 2.03, his failure to do so is a harmless error.

Mr. Torres also argues that the ALJ failed to consider whether his impairment "equals" Listing 2.02 or 2.03. The regulations require that:

> (i) If you have an impairment that is described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, but—
> (A) You do not exhibit one or more of the findings specified in the particular listing, or
> (B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
> (ii) We will find that your impairment is medically equivalent to that listing *if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.*

20 C.F.R. §§ 404.1526(b)(1); 416.926(b)(1) (emphasis added). Mr. Torres argues that the ALJ should have considered the combination of his loss of visual acuity and loss of peripheral fields.

The Commissioner counters that statutory blindness is only met if the claimant *meets* the listing. "You have statutory blindness only if your visual disorder meets the criteria of 2.02 or 2.03A. You do not have statutory blindness if your visual disorder medically equals the criteria of 2.02 or 2.03A or meets or medically equals the criteria of 2.03B, 2.03C, 2.04A, or 2.04B because your disability is based on criteria other than those in the statutory definition of blindness." 20 C.F.R. Pt 404, Subpt. P, Appx 1, §2.00(A)(2)(c). The Commissioner also argues that Mr. Torres has not met his burden of showing that his impairment meets or equals a listing. The Commissioner further argues that the ALJ did not fail to consider the combination of Mr. Torres' impairments because Mr. Torres has only a single impairment, "poor vision." The Commissioner adds that Listings are demanding and stringent. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994). And the

14

Commissioner argues that Mr. Torres' own testimony and reported abilities undermine his claim of presumptive disability. The Commissioner points out that Mr. Torres did not wear glasses since childhood and at the time of his August 4, 2014, consultative examination, he was not wearing corrective lenses but remained able to shop, watch television, and read.

To find that Mr. Torres' visual impairments equal Listing 2.02 or 2.03 even though he does not exhibit the findings required by those listings, there must be "other findings related to [his] impairment that are at least of equal medical significance to the required criteria." It appears Mr. Torres' argument is that the combined effect of his visual acuity and visual field impairments are sufficient to medically equal either Listing 2.02 or 2.03. But as discussed above, the findings in both visual acuity and field of vision are mixed at best. For field of vision, the test results that meet the Listing are invalid, and Dr. Muller found both a normal field of vision examination and that he had complete loss of inferior visual field. For visual acuity, there were no valid results of corrected vision before the ALJ. The only valid corrected vision test in the record indicates vision in the best eye corrected to 20/50. Mr. Torres has failed to point to any evidence to support a finding that the combined effect of his visual acuity and visual field impairments are sufficient to medically equal either Listing 2.02 or 2.03. Accordingly, the failure by the ALJ to provide his reasoning for finding that Mr. Torres' impairments did not meet or equal a Listed impairment is harmless error.

*Issue No. 2.    Whether the ALJ's residual functional capacity assessment is supported by substantial evidence.*

Mr. Torres argues that the ALJ's residual functional capacity assessment is not supported by substantial evidence because the ALJ failed to account for Mr. Torres' visual limitation. Mr. Torres insists that the limitations imposed by Dr. de la Rua and Dr. Medley's conclusion that Mr. Torres had limitation in both near and far acuity is inconsistent with a residual functional capacity

including limitations only to occasional far vision and to avoiding all work hazards, including dangerous machinery and heights.

The Commissioner counters that the ALJ's residual functional capacity assessment is supported by substantial evidence. The Commissioner points out that the state agency medical consultant determined Mr. Torres' vision impairment was non-severe. The Commissioner argues that Mr. Torres' failure to seek treatment for his vision since childhood undermines his credibility. The Commissioner points out that Mr. Torres continued to work for several years while suffering from an impairment that he now claims is disabling. The Commissioner adds that the ALJ considered that Mr. Torres reported to the consultative examiner that he could use public transportation, shop, visit family and friends, read, watch television, and perform household chores. The Commissioner argues that the ALJ incorporated vision limitations into Mr. Torres' residual functional capacity by limiting him to jobs with no work hazards and only occasional far vision.

The Court finds that the ALJ's residual functional capacity assessment for Mr. Torres is supported by substantial evidence. The ALJ found Mr. Torres should be restricted from all work hazards including dangerous machinery and heights, and limited to occasional far vision. Mr. Torres relies on the medical findings of Dr. de la Rua and Dr. Medley. But Dr. de la Rua concluded his test results were invalid. The ALJ's decision to accord these results minimal weight is justified.[3] And although Dr. Medley found that Mr. Torres' near and far acuity and depth perception was limited, Dr. Medley also concluded that because Mr. Torres' vision findings were not valid, his visual impairments were non-severe. R. at 59-60. The ALJ assigned some weight to Dr. Medley's opinion. The ALJ assigned significant weight to the opinion of Dr. Carroll, who

---

[3] As noted above, the ALJ's conclusion is further bolstered by the February 25, 2016, examination results indicating corrected visual acuity of 20/50 in the right eye and 20/70 in the left. R. at 27-28.

reported that Mr. Torres was able to take public transportation, perform household chores, read, and watch television. The ALJ assigned Mr. Torres limitations as a result of his visual impairments, and the Court finds that these limitations are supported by substantial evidence.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that the Motion for Summary Judgment filed by the plaintiff (Rec. Doc. 14) be DENIED; and the Motion for Summary Judgment filed by the Commissioner (Rec. Doc. 15) be GRANTED.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 27th day of August, 2018.

_____
Janis van Meerveld
United States Magistrate Judge